

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**AMIE SHOOP,** on behalf of herself and those
similarity situated,

               Plaintiff,

v.

**MAVERICK ENTERPRISES INC. d/b/a
GREASE MONKEY, GRANGER MOTOR
CORP.,** and **CUTSHAW AUTOMOTIVE
SERVICES, INC., d/b/a CUTSHAW AUTO
SALES,** jointly and severally,

               Defendants.

Civil Action No.: 3: 15cv 00074

TRIAL BY JURY DEMANDED

## PLAINTIFF'S COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Amie Shoop ("Plaintiff" or "Shoop"), by and through her undersigned attorneys, for her Complaint against the Defendants, states as follows:

### INTRODUCTION

1.      Plaintiff contends Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), by knowingly suffering or permitting Plaintiff to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one-and-one-half times her regular hourly rate.

2.      Plaintiff seeks a judgment awarding her unpaid back wages, liquidated damages, and attorneys' fees and costs to make her whole for damages she suffered.

### JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et*

*seq.*

4.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and Eastern District of Virginia Local Rule 3 because Defendants' principal places of business are located within this judicial district, Defendants regularly conduct business in this judicial district, and because a substantial part of the events giving rise to Plaintiff's claims arose in this District.

## PARTIES

6.    Plaintiff, Amie Shoop, is a resident of Mechanicsville, Virginia, and worked as a Courtesy Technician, Hood Technician, and Assistant Manager for Defendants at two Grease Monkey oil change shop locations from approximately June 2013 until September 2014. Plaintiff's consent to sue form is attached as *Exhibit A*.

7.    Defendant, Maverick Enterprises, Inc., d/b/a Grease Monkey ("Maverick"), is a Virginia corporation with its principal office located at 2914 Monument Ave., Richmond, Virginia 23221-1404.

8.    Defendant, Granger Motor Corp. ("Granger"), is a Virginia corporation with its principal office located at 2914 Monument Ave., Richmond, Virginia 23221-1404 and physical storefront location at 3105 Cutshaw Avenue, Richmond, Virginia 23230.

9.    Defendant, Cutshaw Automotive Services, Inc., d/b/a Cutshaw Auto Sales ("Cutshaw") is a Virginia corporation with its principal office located at 3881 Smokey Road, Aylett, Virginia 23009.  Cutshaw's physical storefront is located at 3105 Cutshaw Ave., Richmond, Virginia 23230.

10.    Both Maverick and Granger can be served via their common registered agent, F. Champe Granger, 2914 Monument Ave., Richmond, Virginia 23221.

11.    Cutshaw can be served via its registered agent, Herman C. Dan Daniel III P.C., 8041 Forest Hill Ave., Richmond, Virginia 23225.

12.    Defendants are "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiff in violation of the FLSA.

## GENERAL ALLEGATIONS

13.    In June 2013, Plaintiff began working at two of Defendants' Grease Monkey oil change franchises in the Richmond, Virginia area, located at 8509 Staples Mill Road, Richmond, Virginia and 3308 North Blvd., Richmond, Virginia, respectively.

14.    Plaintiff also worked at Cutshaw Automotive Services, which is located at 3105 Cutshaw Avenue, Richmond, Virginia.

15.    The aforementioned Richmond, Virginia Grease Monkey locations and Cutshaw are owned by the same individuals, Roger Bouchard and F. Champe Granger, who upon information and belief are husband and wife.

16.    According to Grease Monkey's website:

> Grease Monkey International, Inc. (Grease Monkey™) is one of the nation's largest franchisors of automotive fast lube centers. Founded in 1978, Grease Monkey™ currently has more than 250 centers operating in the United States, Latin America and China. Grease Monkey™ is not owned by an [sic] major oil company. Being independent means our focus remains on helping you properly maintain your car or truck, instead of selling you a particular brand of oil.

> Our complete line of fluid, filter and other automotive maintenance services help keep you and your family safe on the road. With each Full Service Oil Change, Grease Monkey™ provides a complete review of your vehicle's maintenance needs according to the owner's manual so you know what services are, or are not, needed at any given time. Sticking to

the maintenance schedule can help you get many more miles from your
vehicle.

*See* http://www.greasemonkeyintl.com/company (last visited January 16, 2015).

17.   After the North Blvd. Grease Monkey closed, Plaintiff began working full time at
Cutshaw, which is another automotive service center owned by Bouchard and Granger as part
of the same business enterprise. A picture of a Grease Monkey appears on Cutshaw's webpage:



*See* http://www.cutshawautomotive.com/our-green-efforts.html (last visited January 16, 2015).

18.   According to its website:

Cutshaw is the best car repair shop in Richmond. We too are locally owned
and help fleet managers with fast, professional, and affordable fleet services–no
appointment needed. We're conveniently located on Cutshaw Ave, Staples Mill
Rd. and N. Boulevard. We offer a complete line of car repair, and
car maintenance services. Our services help increase your drivers' safety,
improve fuel economy, lower operating costs, and extend the life of your fleet
vehicles. Cutshaw, the best car repair in Richmond, keeps a history of all
services performed, provides automated updates and car maintenance expertise,
and we can notify you when your fleet vehicles need additional owner's manual
recommended maintenance services. Seeking the best car care in Richmond -
Cutshaw Automotive.

*See* http://www.cutshawautomotive.com/fleet-services.html (last visited January 16, 2015).

19.   When Plaintiff began her employment with Defendants, she worked exclusively
at the Staples Mill Road Grease Monkey location. Then, after a customer representative quit in
the fall of 2013, Plaintiff started working at the North Blvd. Grease Monkey location, as well.
Plaintiff typically worked 3-5 days per week at the North Blvd. location and 1-3 days at the

Staples Mill Road location. Plaintiff typically worked in excess of 50 hours per week on average split between these two locations.

20.     After the North Boulevard Grease Monkey closed, in approximately June 2014, Plaintiff began working at Cutshaw. During this time, Plaintiff worked at the Staples Mill Road Grease Monkey 3-5 days per week and 1-2 days per week at Cutshaw. Plaintiff continued to work in excess of 50 hours per week on average split between these two locations.

21.     When Plaintiff approached working 40 hours at one location in a workweek, Defendants required her to start working at a second location for the remainder of that week in order to evade the FLSA's overtime requirements.

22.     Upon information and belief, Defendants also required other employees to work similar schedules between two locations in an attempt to evade the FLSA's overtime requirements.

23.     Defendants Cutshaw and Granger utilize the same payroll system.

24.     Defendants comprise a common enterprise with the same ownership.

25.     Defendants employ approximately 8-10 employees at each Grease Monkey location.

26.     Defendants hired Plaintiff as a Courtesy Technician in June 2013 at the rate of $8.00/hr., and her job duties included cleaning windows, vacuuming, checking tire pressure, and the like.

27.     In July 2013, Plaintiff became a Hood Technician, at the rate of $9.00/hr., wherein her job duties included checking fluids, performing oil changes and vehicle assessments, making recommendations for services, cleaning-up the shop and taking out the garbage.

28.   In February 2014, Plaintiff became an hourly Assistant Manager, at the rate of $12/hr., although management was not Plaintiff's primary duty in this role.   Rather, the majority of her time was spent performing non-managerial, non-exempt work.   In this position, Plaintiff's job duties included revising schedules, covering shifts, assisting with customer complaints, inventory ordering, dealing with vendors and training other employees.

29.   While employed by Defendants, Plaintiff typically worked 6 days per week, from approximately 7:30 a.m. until 5:30 p.m. or 6:00 p.m.

30.   Although Plaintiff typically worked 50 or more hours per week, Defendants only paid Plaintiff her straight time rate and did not pay her an overtime premium.

31.   Defendants attempted to circumvent their obligation to pay Plaintiff overtime by issuing her two different paychecks in the same period so it would appear that Plaintiff worked fewer hours in a given week then she actually did.

32.   For example, for the pay period that ended on May 16, 2014, for check #983, in "week two," Plaintiff worked 32.50 hours.    For check #422, also issued on May 16, 2014, in "week two," Plaintiff worked 9.30 hours.   Hence, for "week two" of this pay period, Plaintiff worked 41.80 hours, of which 40 hours should have been paid at her straight time base rate of pay and 1.80 hours should have been paid at her overtime rate (see *Ex*hibit *B*, Paystubs).

33.   Similarly, for the pay period that ended on June 27, 2014, Defendants issued Plaintiff three different checks all on the same date.   For check #1028, in "week two," Plaintiff worked 9.97 hours.   For check #447, in "week two," Plaintiff worked 34 hours.   For check #3322, in "week two," Plaintiff worked 1.41 hours.   Hence, for "week two" of this pay period, Plaintiff worked 45.38 hours, of which 40 hours should have been paid at her base rate of pay and 5.38 hours should have been paid at her overtime rate of pay (see *Ex*hibit B, Paystubs).

6

34.   These particular paystubs and calculations are provided by way of example and are not the only weeks for which Plaintiff seeks recovery, as there are additional weeks where Defendants willfully failed to pay Plaintiff overtime wages.

35.   Despite Defendants' attempts to split Plaintiff's time among different locations, even some of Plaintiff's paystubs establish a prima facie overtime violation.  For instance, on her April 4, 2014 paycheck, Plaintiff worked 40.90 hours in one week but was only paid her regular rate of $12.00/hr. for all hours worked.  Instead, Plaintiff should have been paid 40 hours at her regular hourly rate and .90 of an hour at her overtime rate of at least $18.00/hr (see *Exhibit B*, Paystubs).

36.   Likewise, on her July 25, 2014 paycheck, Plaintiff worked 41.25 hours in one week but was paid only her regular rate of $12.00/hr. for all hours worked.  Instead, Plaintiff should have been paid 40 hours at her regular hourly rate and 1.25 hours at her overtime rate of at least $18.00/hr (see *Exhibit B*).

37.   Defendants failure to pay Plaintiff overtime is also contrary to the written overtime pay policy contained in the employee handbook Defendants provided Plaintiff:

> Overtime – Your supervisor must approve all overtime in advance.  Overtime pay is equal to 1.5 times the regular rate of pay, and non-exempt employees will receive overtime pay in accordance with local wage and hour regulations.

See *Exhibit C*, Employee Handbook Excerpt.

38.   Each of the job titles Plaintiff held were non-overtime exempt positions and Plaintiff performed non-overtime exempt job duties, such as cleaning the shop and checking fluid levels in customer's vehicles.

39.   Plaintiff was occasionally paid a 2% bonus for selling certain types of products and services.  These bonuses were paid in separate checks from her payroll but should have

been factored into her regular hourly rate in order to determine her true overtime rate.  The same is true of holiday pay and/or training pay that Plaintiff sometimes received.

40.     Defendants also failed to pay Plaintiff overtime for attending required training classes.

## FLSA COLLECTIVE ACTION ALLEGATIONS

41.     Plaintiff brings this collective action under 29 U.S.C. §216(b) on behalf of herself and a collective group defined to include:

> *All hourly employees of Defendants who worked more than 40 hours in a workweek for which they were not paid an overtime premium at any time in the past three years.*

("Collective Group Members").  Plaintiff reserves the right to amend this definition as necessary or as new information becomes available.

42.     Plaintiff and the Collective Group Members are members of the collective group defined above, because they worked as non-exempt employees for Defendants and would often work in excess of 40 hours per week at their regular base rate of pay instead of at the statutorily mandated rate of one-and-one-half times their regular rate.

43.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the Collective Group Members to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

44.     Defendants' annual sales exceed $500,000 and Defendants have more than two employees, so the FLSA applies in this case on an enterprise basis.

45.     Defendants' employees engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

46.     The FLSA requires an employer to pay employees the federally mandated

overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. See 29 U.S.C. § 207.

47.     Defendants violated the FLSA by failing to pay Plaintiff and the Collective Group Members overtime compensation, at the rate of one and one-half times their regular hourly rate, for all hours worked in excess of 40 per workweek.

48.     Plaintiff and the Collective Group Members are not exempt from the overtime pay requirements of the FLSA.

49.     The Fair Labor Standards Act requires all employers to keep all payroll records and time records for at least three (3) years, including all basic timecards and daily starting/stopping times of individual employees. See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

50.     This action may be properly maintained as an FLSA collective action because, during the relevant period :

> (a) Defendants directly and/or jointly employed the Collective Group Members;
>
> (b) Defendants permitted the Collective Group Members to work in excess of 40 hours per week performing non-exempt work at their regular rates of pay instead of paying them overtime rates;
>
> (c) Defendants maintained common timekeeping and scheduling systems and policies with respect to Plaintiff and the Collective Group Members;
>
> (d) Defendants maintained common overtime work and pay policies with respect to Plaintiff and the Collective Group Members (see, e.g., *Exhibit C*);
>
> (e) Defendants maintained common payroll systems and policies with respect to Plaintiff and the Collective Group Members; and
>
> (f) Defendants' human resources systems are centrally-organized and controlled.

## COUNT I

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201, *et seq.*
## FAILURE TO PAY OVERTIME WAGES

51.     Plaintiff repeats and re-alleges the preceding paragraphs as if fully stated herein.

52.     Plaintiff and the Collective Group Members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

53.     The Defendants were joint employers of the Plaintiff.

54.     29 U.S.C. § 207(a)(1) states that an employee must be paid an overtime rate, equal to at least 150% times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

55.     Throughout the relevant period, Defendants expected and required Plaintiff and the Collective Group Members to work in excess of 40 hours per week at their regular rate instead of paying them at an overtime rate equal to at least 150% times the employee's regular rate of pay for all hours worked in excess of 40 hours per week.

56.     Plaintiff and the Collective Group Members have been harmed as a direct and proximate result of Defendants' willful unlawful conduct, because they have been deprived of overtime wages owed for weeks wherein they worked in excess of 40 hours per week.

WHEREFORE, Plaintiff respectfully prays for an Order:

(a) Requiring Defendants to provide a list of the names, addresses, phone numbers and e-mail addresses of the Collective Group Members;

(b) Authorizing Plaintiff's counsel to issue an approved form of notice informing the Collective Group Members of the nature of the action and their right to join this lawsuit;

(c) Finding Defendants willfully violated the applicable overtime provisions of the FLSA by failing to pay all required wages to Plaintiff and the Collective Group Members;

(d) Granting judgment in favor of Plaintiff and the Collective Group Members on their FLSA claim;

(e) Awarding compensatory damages to Plaintiff and the Collective Group Members in an amount to be determined;

(f) Awarding liquidated damages to Plaintiff and the Collective Group Members equal to their compensatory damages;

(g) Awarding all costs and reasonable attorneys' fees for the work required to prosecute this action; and

(h) Awarding any further relief the Court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through her undersigned counsel, hereby demand a jury trial in the above-captioned matter.

Respectfully submitted,

AMIE SHOOP

By: _____
Of Counsel

Cindra Dowd, Esq. (VSB No. 33819)
Richard J. Serpe, Esq. (VSB No. 33340)
THE LAW OFFICES OF RICHARD J. SERPE, PC
580 East Main Street, Suite 310
Norfolk, VA 23510
Telephone: (757) 233-0009
Facsimile: (757) 233-0455
cdowd@serpefirm.com
rserpe@serpefirm.com

and

Jesse L. Young *(Pending pro hac vice admission)*
MI Bar No. 71624
Neil B. Pioch *(Pending pro hac vice admission)*
MI Bar No. 67677
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
jyoung@sommerspc.com
npioch@sommerspc.com

Timothy J. Becker*(Pending pro hac vice admission)*
MN Bar No. 256663
Jacob R. Rusch*(Pending pro hac vice admission)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
(612) 436-1800
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiffs*